UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA for the use
and benefit of NATIONAL DEVELOPMENT and
CONSTRUCTION CORP.,

                               Plaintiff,                **REPORT AND**
                                                    **RECOMMENDATION**

        -against-

                                                        11 Civ. 730 (CS) (PED)

UNITED STATES ENVIRONMENTAL
UNIVERSAL SERVICES, INC., PALONIA
DEVELOPMENT & PRESERVATION SERVICES
CO., LLC and FIRST SEALORD SURETY, INC.,

                              Defendants.
------------------------------------------------------------------X

TO THE HONORABLE CATHY SEIBEL, United States District Judge:

      Having conducted an inquest on the basis of plaintiff's unopposed submissions, and for the reasons that follow, I respectfully recommend that judgment be entered in its favor and against defendant Palonia in the amount of $120,000.00, together with prejudgment interest as calculated below.

      I further recommend that the Court (1) deny plaintiff's request for attorney's fees, (2) dismiss plaintiff's quantum meruit claim against defendant Palonia and (3) dismiss plaintiff's breach of contract and quantum meruit claims against defendant USEUS.

## I. BACKGROUND

      On or about February 2, 2011, plaintiff National Development and Construction Corporation ("NDC") commenced this action to recover monies due and owing for labor, services and material furnished by plaintiff for the repair of the bell tower at the Poughkeepsie Post Office in Poughkeepsie, New York. On or about October 3, 2013, Your Honor adopted a

Report and Recommendation issued by Judge Yanthis on September 11, 2013 (Dkt. #57), declared defendant United States Environmental Universal Services, Inc. ("USEUS") in default and directed that plaintiff "may seek an inquest as to damages once the status of defendant Palonia is clear." (Dkt. #60). On or about November 20, 2013, Your Honor adopted a Report and Recommendation issued by Judge Yanthis on October 30, 2013 (Dkt. #61) and declared defendant Palonia Development & Preservation Services Co., LLC ("Palonia") in default (Dkt. #63). On November 26, 2013, the case was redesignated to the undersigned. On December 2, 2013, Your Honor referred the matter to me for an inquest to determine the amount of damages to be awarded in the default judgment to be entered against defendants USEUS and Palonia (Dkt. #64).

On December 5, 2013, I issued a Scheduling Order directing (1) plaintiff to file and serve proposed findings of fact and conclusions of law concerning its claim for damages, and any supporting evidentiary materials, by January 3, 2014 and (2) defendants to file and serve their responses, if any, to plaintiff's submissions by January 24, 2013 (Dkt. #65). The Order also stated the following:

> The Court hereby notifies the parties that it may conduct this inquest based solely upon the written submissions of the parties. See Fustock v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989). To the extent that any party seeks an evidentiary hearing on the issue of damages (or other monetary relief), such party must set forth in its submission the reason why the inquest should not be conducted based upon the written submissions alone, including a description of what witnesses would be called to testify at a hearing and the nature of the evidence that would be submitted.

(Dkt. #65 at ¶ 4.) Additionally, I directed plaintiff to serve copies of the Order on defendants USEUS and Palonia by December 15, 2013 and to file appropriate proof of service (Dkt. #65 at ¶ 5). On January 6, 2014, I granted plaintiff's request for an extension of time (to January 7,

2014) to file its submissions (Dkt. #66).

Plaintiff tried to file its submissions on January 9, 2014 (Dkt. #67–ECF Filing Error). On January 13, 2014, plaintiff filed its Proposed Findings of Fact and Conclusions of Law and supporting Exhibits 1-23 (Dkt. #68). However, plaintiff did not file proof of service of the Scheduling Order. On or about March 13, 2014, chambers staff spoke with plaintiff's counsel, who acknowledged that he had not served defendants with copies of either the Scheduling Order or plaintiff's inquest submissions.

Accordingly, by Order dated March 13, 2014, I directed plaintiff's counsel (1) to serve defendants USEUS (c/o Mr. Roque Schipilliti) and Palonia (c/o Mr. Gerardo Sanchez), no later than March 20, 2014, at their last known corporate addresses with copies of the December 5th Scheduling Order, plaintiff's inquest submissions and the March 13th Order and (2) to file proof of service no later than March 21, 2014 (Dkt. #69). I consequently extended defendants' time (to April 18, 2014) to serve and file responses, if any, to plaintiff's submissions (Dkt. #69). On March 21, 2014, plaintiff's counsel filed appropriate proof of service (Dkt. #70).

Defendants have not made any written submissions, nor have they contacted my chambers in any fashion. Plaintiff has not requested an evidentiary hearing on the issue of damages. Because plaintiff's inquest submissions provide a basis for damages, no hearing was required. Fustock, 873 F.2d at 40.

## II. APPLICABLE LAW

When a defendant defaults, the court must accept all well-pleaded factual allegations in the complaint as true, except those pertaining to the amount of damages. Finkel v. Romanowicz, 577 F.3d 79, 83 n. 6, 84 (2d Cir. 2009); Fed. R. Civ. P. 8(b)(6). "Nonetheless, even after default has been entered, district courts retain the discretion to require proof of necessary facts and need

not agree that the alleged facts constitute a valid cause of action." Deng v. 278 Gramercy Park Group LLC, No. 12 Civ. 7803 (DLC)(JLC), 2014 WL 1016853, at *4 (S.D.N.Y. Mar. 14, 2014) (quotation and citation omitted); see also Fed. R. Civ. P. 55(b)(2). In other words, because a defaulting defendant does not admit conclusions of law, In re Indus. Diamonds Antitrust Litig., 119 F. Supp.2d 418, 420 (S.D.N.Y. 2000), the court "is also required to determine whether the [plaintiff's] allegations establish [the defendants'] liability as a matter of law." Finkel, 577 F.3d at 84. "A default, then, only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." Taizhou Zhongneng Import and Export Co., LTD. v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013).

Similarly, a defendant's default does not constitute an admission of damages. Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). On an inquest for damages, the plaintiff bears the burden of proof and must introduce admissible evidence to establish, with reasonable certainty, a basis for the amount of damages it seeks. House v. Kent Worldwide Mach. Works, Inc., 359 F.App'x 206, 207 (2d Cir. 2010); Prince of Peace Enter., Inc. v. Top Quality Food Mkt., LLC, No. 07 Civ. 349 (LAP)(FM), 2014 WL 793084, at *3 (S.D.N.Y. Feb. 28, 2014). The plaintiff is entitled to all reasonable inferences from the evidence it presents. House, 359 F.App'x at 207.

### III. FINDINGS OF FACT

The following findings of fact are based on the complaint's well-pleaded allegations regarding liability and the admissible evidence in plaintiff's inquest submissions.

On June 25, 2008, the United States Postal Service ("USPS") and USEUS entered into a contract wherein USPS agreed to pay USEUS $496,270.72 for lead-based paint abatement and restoration of the bell tower at the Poughkeepsie, New York post office. Exh. 1 (Complaint), at

2; Exh. 5 (Indefinite Quantity Contract/Construction).[1] USEUS was the prime contractor for the lead abatement work at the Poughkeepsie post office. Exh. 1, at 2. USEUS, as principal, and First Sealord Surety, as the surety, executed a payment bond for the protection of all persons supplying labor and material to complete the work provided for in the contract between USPS and USEUS. Exh. 1, at 3.

On October 22, 2008, there was a fire in the bell tower at the Poughkeepsie post office. Exh. 1, at 3. In May 2009, the owner of USEUS (Roque Schipilliti) informed NDC's president (Manny Contreras) that a fire had damaged the bell tower at the Poughkeepsie post office and requested NDC's services as subcontractor to help restore the bell tower. Exh. 6 (Affidavit of Manny Contreras), at 1, ¶ 3.[2] Mr. Contreras informed Mr. Schipilliti that, in order for USPS to approve NDC's work on the project, NDC's work would have to be supervised by a company

---

[1] The paragraphs in the Complaint are numbered in a confusing manner. For the sake of clarity, citations to the Complaint refer to page numbers only.

[2] I note that Manny Contreras's affidavit is unsworn. Pursuant to 28 U.S.C. § 1746, an affidavit may be unsworn, so long as it contains language in substantially the following form:

> I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).
> (Signature).

Although the Contreras affidavit reflects firsthand knowledge and is affirmed under penalty of perjury, it is undated which brings it out of technical compliance with 28 U.S.C. § 1746. However, because this shortcoming has no relevant bearing on the contents of the affidavit, I will overlook the procedural technicality. See BMS Entm't/Heat Music LLC v. Bridges, No. 04 Civ. 2584 (PKC), 2005 WL 2482493, at *2 n.1 (S.D.N.Y. Oct. 7, 2005) (accepting an undated affidavit under 28 U.S.C. § 1746); Lakeview Outlets, Inc. v. Uram, No. 95–CV–0136, 1996 WL 571520, at *1-2 (N.D.N.Y. Oct. 2, 1996) (accepting an undated affidavit even though it also failed to include an express "penalty of perjury clause").

Additionally, the paragraphs in the Contreras affidavit are misnumbered, necessitating citation to both page numbers and paragraphs.

specializing in historical renovation and recommended Palonia. Exh. 6, at 1, ¶ 4. USEUS contracted with Palonia to perform historically accurate fire restoration repairs to the dome area of the Poughkeepsie post office. Exh. 1, at 3. Palonia, in turn, subcontracted the fire restoration repair to NDC. Id. Under the terms of their subcontract, dated May 27, 2009, Palonia agreed to pay NDC $120,000.00 for its work on the project, in equal amounts due on June 15, 2009, June 29, 2009 and July 13, 2009 and final amount due thirty-five days after completion of the work. Exh. 1, at 3; Exh. 6, at 2, ¶¶ 10-12; Exh. 11 (Standard Form of Agreement Between Contractor and Subcontractor). NDC began work on the project on or about June 5, 2009 and completed its work on or about November 11, 2009. Exh. 1, at 3; Exh. 6, at 4, ¶ 11. NDC satisfactorily completed its work on the project but has not received any payment. Exh. 1, at 4; Exh. 6, at 4, ¶¶ 14-15.

## IV. LIABILITY

In its inquest submission, plaintiff seeks damages against USEUS and Palonia on theories of breach of contract, quantum meruit, and pursuant to the Miller Act, 40 U.S.C. § 3131 *et seq.* Proposed Findings of Fact and Conclusions of Law, at 9-11.[3] However, while plaintiff's complaint asserts claims against USEUS and Palonia for breach of contract and quantum meruit, the complaint asserts a Miller Act claim only against the surety, First Sealord Surety, Inc. Exh. 1, at 4-5. Because "[i]t is the . . . [c]omplaint, not the inquest submissions, that establishes

---

[3] The Miller Act was formerly codified at 40 U.S.C. §§ 270a–270d (2000). It "requires general contractors on government building projects to post a payment bond, and provides subcontractors with a right of action against the prime contractor or the surety." Diversified Carting, Inc. v. City of New York, No. 04 Civ. 9507 (HB), 2006 WL 147584, at *10 (S.D.N.Y. Jan. 20, 2006). A sub-subcontractor on a federal construction project who has a contractual relationship with either a prime contractor or subcontractor on the project has a right of action against both of them and the surety under the Miller Act. United States ex rel. Polied Envtl. Servs., Inc. v. Incor Group, Inc., 238 F. Supp.2d 456, 459, 461-62 (D. Conn. 2002).

defendants' liability," the Court may not award damages against USEUS and Palonia based upon a Miller Act claim. Gutman v. Klein, No. 03 CV 1570 (BMC)(RML), 2010 WL 4975593, at *10 (E.D.N.Y. Aug. 19, 2010) (noting that "[p]laintiffs offer[ed] no authority for the sweeping proposition that would allow them to establish liability . . . on inquest" for allegation that was made "in their inquest submissions" but was "absent in their complaint") (Report and Recommendation), adopted by 2010 WL 4916722, at *7 (E.D.N.Y. Nov. 24, 2010); see also Braccia v. D'Blass Corp., No. 08 Civ. 8927 (LTS)(KNF), 2011 WL 2848146, at *4 (S.D.N.Y. June 13, 2011) (finding that "[n]otice that comes at the inquest stage" is insufficient to "permit a plaintiff in a default action to recover for damages not claimed in the complaint") (quoting Silge v. Merz, 510 F.3d 157, 161 (2d Cir. 2007)) (internal quotation marks omitted) (Report and Recommendation), adopted by 2011 WL 2848202 (S.D.N.Y. July 18, 2011). As to the claims against USEUS and Palonia for breach of contract and quantum meruit, I must determine whether plaintiff has established defendants' liability as a matter of law on those claims. See Lenard v. Design Studio, 889 F. Supp.2d 518, 528 (S.D.N.Y. 2012).

A. Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." Fischer & Mandell v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011).

1. *USEUS*

The complaint's well-pleaded allegations regarding liability and the admissible evidence in plaintiff's inquest submissions fail to establish the existence of an agreement between NDC and USEUS. Plaintiff pled that USEUS contracted with Palonia to perform fire restoration repairs to the dome area of the Poughkeepsie post office and Palonia, in turn, subcontracted the

fire restoration repair to plaintiff. Exh. 1, at 3. Plaintiff's inquest submissions included a signed copy of its agreement with Palonia. Exh. 11. However, USEUS was not a party to the contract between plaintiff and Palonia; nor was plaintiff a party to the contract between USEUS and Palonia. Thus, plaintiff fails to establish USEUS's liability for breach of contract as a matter of law. Accordingly, I conclude and respectfully recommend that plaintiff's breach of contract claim against USEUS must be dismissed.

### 2. Palonia

Plaintiff has established the existence of a subcontractor agreement between NDC and Palonia, dated May 27, 2009, governing plaintiff's fire restoration work at the Poughkeepsie post office. Exh. 1, at 3; Exh. 11. NDC commenced performance on the project on or about June 5, 2009 and satisfactorily completed its work on or about November 11, 2009. Exh. 1, at 3; Exh. 6, at 4, ¶¶ 11, 14. Although plaintiff adequately performed, Palonia failed to pay NDC any monies owed pursuant to the agreement and, thus, breached the contract. Exh. 1, at 4; Exh. 6, at 4, ¶¶ 14-15. Palonia's breach resulted in damage to plaintiff, namely the difference between what was promised and what was actually paid. Accordingly, plaintiff's well-pleaded allegations regarding liability and the admissible evidence in its inquest submissions establish a *prima facie* case for recovery against Palonia for breach of contract.

### B. Quantum Meruit

Plaintiff also seeks damages on a quantum meruit basis against USEUS and Palonia. Under New York law, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." United States ex rel. W.P. Schaefer Constr. Co., Inc. v. Veterans Contracting Group, Inc., No. 11-CV-4189, 2013 WL 6579752, at *7 (E.D.N.Y. Dec. 16, 2013)

(quoting Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 388 (1987)). "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." Merrill Iron & Steel, Inc. v. Yonkers Contracting Co., Inc., No. 05 Civ. 5042 (WHP), 2006 WL 2679940, at *5 (S.D.N.Y. Sept. 19, 2006) (quotation and citation omitted). Under certain circumstances, however, a narrow exception exists whereby "a general contractor may become liable in quasi-contract to a 'second-tier' subcontractor with whom it has not contracted." U.S. East Telecomm., Inc. v. U.S. West Commc'n Serv., Inc., 38 F.3d 1289, 1291 (2d Cir. 1994). Specifically, under New York law, a sub-subcontractor may recover under a quasi-contract theory of liability against a general contractor, "even when a separate contract exists between the [sub-subcontractor and subcontractor], if the [general contractor] has agreed to pay the [subcontractor's] debt or if the circumstances surrounding the parties' dealings can be found to have given rise to an obligation to pay." Id. at 1297-98.

Here, the existence of plaintiff's contract with Palonia, which governs plaintiff's fire restoration work at the Poughkeepsie post office, precludes recovery from Palonia for monies due and owing under any quasi-contract theory of liability. As to USEUS, the complaint's well-pleaded allegations regarding liability and the admissible evidence in plaintiff's inquest submissions fail to establish that USEUS agreed to pay plaintiff for its work or otherwise assumed an obligation to pay for plaintiff's work. Accordingly, I conclude and respectfully recommend that plaintiff's quantum meruit claims against USEUS and Palonia must be dismissed.

## V. DAMAGES

Because plaintiff has established Palonia's liability as a matter of law for breach of contract, I must determine the amount of damages that should be awarded to plaintiff against

Palonia as a result of its default. Generally, two types of damages may be awarded for breach of contract:

> (1) general or market damages; and (2) special or consequential damages. A plaintiff is seeking general damages when he tries to recover the value of the very performance promised. "Special" or "consequential" damages, on the other hand, seek to compensate a plaintiff for additional losses (other than the value of the promised performance) that are incurred as a result of the defendant's breach. As a general rule, special or consequential damages are not recoverable unless the party was on notice of those special damages at the time of contracting.

Rensselaer Polytechnic Inst. v. Varian, Inc., 340 F.App'x 747, 750 (2d Cir. 2009) (internal quotation marks and citations omitted).

### A. Principal Amount

"Under New York law, damages for breach of contract should put the plaintiff in the same economic position he would have occupied had the breaching party performed the contract." Oscar Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 196 (2d Cir. 2003). Plaintiff seeks general damages in the amount of $120,000.00 reflecting monies due and owing for its full contractual performance. Proposed Findings of Fact and Conclusions of Law, at 11. The contract which Palonia breached bound it to pay plaintiff $120,000.00 for its work on the fire restoration project, in equal amounts due on June 15, 2009, June 29, 2009 and July 13, 2009 and final amount due thirty-five days after completion of the work. Exh. 1, at 3; Exh. 6, at 2, ¶¶ 10-12; Exh. 11. Plaintiff began work on the project on or about June 5, 2009 and completed its work on or about November 11, 2009. Exh. 1, at 3; Exh. 6, at 4, ¶ 11. Plaintiff satisfactorily completed its work on the project but has not received any payment. Exh. 1, at 4; Exh. 6, at 4, ¶¶ 14-15. Accordingly, I find that there is a basis for the compensatory damages requested and that plaintiff has established with reasonable certainty that it is has been damaged by Palonia's breach in the amount of $120,000.00.

B. Special Damages

Plaintiff seeks to recover the proceeds of a $5,000.00 loan it provided to USEUS "to get Palonia to begin its portion of work on the project." Proposed Findings of Fact and Conclusions of Law, at 11. According to plaintiff, "Palonia refused to start work on the project without a $5,000.00 down payment from USEUS." Exh. 6, at 2, ¶ 13. Because plaintiff had already purchased some materials needed for the project and was aware that USEUS was having financial trouble, plaintiff "agreed that NDC would help USEUS with the $5,000.00, and USEUS would pay it back to NDC when the USPS started releasing funds from the project." Id. at 2-3, ¶ 14. On June 2, 2009, plaintiff issued check number 1631, payable to Roque Schipilliti, in the amount of $5,000.00. Id. at 3, ¶ 15; Exh. 15 (copy of check).

Plaintiff fails to demonstrate that it is entitled to reimbursement of the $5,000.00 as a remedy for Palonia's breach of contract. Plaintiff loaned the money to USEUS, not Palonia (the party with which plaintiff contracted), in exchange for USEUS's promise to repay the loan. Plaintiff does not allege (nor is there any proof) that Palonia undertook an obligation to repay the loan. Moreover, there is no evidence that Palonia spurred plaintiff to front the money or that Palonia was involved in any way in the genesis of the transaction between plaintiff and USEUS. In sum, there is no evidence that Palonia was on notice–at the time of its contract with plaintiff– that plaintiff would loan USEUS $5,000.00. Accordingly, plaintiff has failed to establish, with reasonable certainty, a basis for an award of $5,000.00 in special damages against Palonia.[4]

C. Prejudgment Interest

---

[4] The complaint contains no factual allegations concerning the loan. Thus, plaintiff cannot recover the $5,000.00 as inquest damages against USEUS under any theory of liability. See Gutman, 2010 WL 4975593, at *10.

Plaintiff seeks prejudgment interest on its inquest damages award. Proposed Findings of Fact and Conclusions of Law, at 12-13. "New York law requires a district court to grant prejudgment interest when a party is entitled to such interest as a matter of right." Matsumura v. Benihana Nat'l Corp., 465 F.App'x 23, 30 (2d Cir. 2012). Under New York law, a prevailing party on a breach of contract claim is entitled to prejudgment interest as a matter of right. N.Y. C.P.L.R. § 5001(a). "[B]ecause prejudgment interest is a matter of substantive law, the New York interest rate applies to the interest sought." Adrian v. Town of Yorktown, 620 F.3d 104, 107 (2d Cir. 2010) (per curiam). Under New York law, prejudgment interest is calculated at a rate of nine percent per annum. N.Y. C.P.L.R. § 5004.

As discussed above, plaintiff is entitled to inquest damages in the amount of $120,000.00 against Palonia based upon its breach of contract. Thus, plaintiff is also entitled to prejudgment interest on that amount, which "shall be computed from the earliest ascertainable date the cause of action existed." N.Y. C.P.L.R. § 5001(b). Plaintiff argues that the prejudgment interest should run from January 10, 2010 to the date of the judgment. Proposed Findings of Fact and Conclusions of Law, at 12-13. Plaintiff completed its work on the project on or about November 11, 2009; the balance due on the contract was payable on or about December 16, 2010.[5] It seems to me, then, that the earliest ascertainable date the cause of action existed was on or about December 17, 2010. Although it is not clear why plaintiff requests a later starting date, the proposed date does not run afoul of the statutory requirements. Therefore, I will calculate prejudgment interest from January 10, 2010. Further, interest is accruing on plaintiff's breach of

---

[5] Plaintiff ignores Palonia's failure to pay installment payments as they came due under the contract.

contract damages at the rate of $29.59 per day.[6] Calculating interest from January 10, 2010, the total interest accrued thus far (as of July 15, 2014) amounts to $48,704.74.[7] Accordingly, I respectfully recommend that plaintiff be awarded prejudgment interest in the amount of $48,704.74, with additional interest to be calculated through the date of judgment herein at a rate of $29.59 per day.

D. <u>Attorney's Fees</u>

Plaintiff seeks attorney's fees and costs in the amount of $49,124.85. Proposed Findings of Fact and Conclusions of Law, at 13-14; Exh. 6, at 4, ¶ 18. In general, pursuant to the "American Rule," attorney's fees are not recoverable in breach of contract actions unless the contract provides otherwise. <u>E*Trade Fin. Corp. v. Deutsche Bank AG</u>, 374 F.App'x 110, 123 (2d Cir. 2010). Plaintiff acknowledges this limitation and does not allege any contractual basis for an award of attorney's fees; rather, relying on <u>F.D. Rich Co. v. United States for the Use of Indus. Lumber Co., Inc.</u>, 417 U.S. 116, 129 (1974), plaintiff argues that it is entitled to attorney's fees because "Defendant USEUS acted in bad faith, vexatiously, and for oppressive reasons." Proposed Findings of Fact and Conclusions of Law, at 13.

Under an exception to the American Rule, a court may award attorney's fees "to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." <u>F.D. Rich Co.</u>, 417 U.S. at 129. Plaintiff argues that an award of attorney's fees is warranted under this exception because: (1) USEUS could not complete the

---

[6] Plaintiff's damages for breach of contract amount to $120,000.00. Calculating interest at the rate of 9% per annum, the yearly interest amounts to $10,800.00. When divided by 365, the per diem interest amounts to $29.59.

[7] Four years (January 10, 2010 - January 10, 2014) ($43,200.00) plus 186 days ($5,503.74).

project without plaintiff; (2) plaintiff ordered supplies and materials and fronted the $5,000 loan to USEUS; (3) USEUS never complained about plaintiff's performance or sought to replace plaintiff with another contractor; and (4) plaintiff fully performed but was not paid for its work. Proposed Findings of Fact and Conclusions of Law, at 14. Plaintiff's argument fails, in the first instance, for an obvious reason: USEUS is not plaintiff's "opponent" on the underlying breach of contract claim, and plaintiff does not argue that Palonia acted in bad faith, vexatiously, wantonly or for oppressive reasons. Moreover, even if USEUS could be held liable for breach of contract (and was found to have acted in bad faith), "[a] finding that one defendant has acted in bad faith in conducting litigation does not justify an award of fees against a codefendant." Dow Chem. Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986). Additionally, the conduct plaintiff complains of is the conduct giving rise to the substantive claims. In the Second Circuit, however, "[t]he appropriate focus for the court in applying the bad-faith exception to the American Rule is the conduct of the party in instigating or maintaining the litigation." Kerin v. U.S. Postal Serv., 218 F.3d 185, 195 (2d Cir. 2000) (citing Dow Chem., 782 F.2d at 345). Thus, "[i]t is uncontroversial that business conduct that is entirely unrelated to the process of litigation may not form the sole basis of a bad faith fee award." Id. Accordingly, I respectfully recommend that plaintiff's request for attorney's fees be denied.[8]

## V. CONCLUSION

For the foregoing reasons, I conclude (1) that plaintiff's breach of contract claim against USEUS must be dismissed, (2) that plaintiff's quantum meruit claims against USEUS and

---

[8] I also note that plaintiff failed to properly substantiate its request for attorney's fees via contemporaneous time records that show "for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir.1983).

Palonia must be dismissed, (3) that plaintiff has established Palonia's liability for breach of contract as a matter of law, (4) that plaintiff has established with reasonable certainty that it is has been damaged by Palonia's breach in the amount of $120,000.00, (5) that plaintiff has failed to establish, with reasonable certainty, a basis for an award of $5,000 in special damages against Palonia, (6) that plaintiff is entitled to prejudgment interest from January 10, 2010 and (7) that plaintiff is not entitled to an award of attorney's fees.  Accordingly, I respectfully recommend that the Court enter a default judgment against defendant Palonia and award damages in the amount of $120,000.00 and prejudgment interest in the amount of $48,704.74, plus additional interest at the rate of $29.59 per day from July 15, 2014 until the date judgment is entered.


Dated:   July 15, 2014                                Respectfully Submitted,
         White Plains, New York

                                                      _____
                                                      Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Cathy Seibel, at the Honorable Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Seibel.



A copy of this Report and Recommendation has been mailed to:


Mr. Gerardo Sanchez
Palonia Development & Preservation Services Co., LLC
38-11 Ditmars Boulevard
Astoria, New York 11105


Mr. Roque Schipilliti
United States Environmental Universal Services, Inc.
365 River Drive
Garfield, New Jersey 07026